UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
JACQUELYN D. STALLWORTH,                             Chapter 7
        DEBTOR.                              Case No. 11-19919-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matter before the Court began with the order to show cause dated October 21, 2011 (the "OSC"), directing Attorney Georgia S. Curtis ("Attorney Curtis"), counsel of record to Jacquelyn D. Stallworth (the "Debtor"), to show cause why sanctions should not be imposed against her in light of her egregious failures to comply with the procedures established by the Court for the use of the Case Management/Electronic Case Filing system ("CM/ECF"). During the course of the proceedings on the OSC, however, it became apparent that Attorney Curtis's CM/ECF difficulties were a symptom of a much larger problem as evidenced by, *inter alia*, her repeated misrepresentations to this Court. For the reasons set forth below, I have already suspended Attorney Curtis's CM/ECF privileges until such time as she completes additional training in its use and will now refer her to the United States District Court for the District of Massachusetts (the "District Court") for further disciplinary proceedings as may be appropriate.

**II. BACKGROUND[1]**

      The following is a cautionary tale of what occurs when the uninitiated attempt to practice before the bankruptcy court without a firm grasp of the Bankruptcy Code and Federal Rules of

---

[1] I take judicial notice of the docket in the present case, as well as those of related cases before this Court. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 17-19 (1st Cir. 2004) (citations omitted).

1

Bankruptcy Procedure. Even the most well intentioned practitioners can inadvertently wreak havoc on unsuspecting clients by failing to appreciate the complexity of the bankruptcy process. It is also a prime example of how things can escalate when an attorney is less than candid with the Court about his or her mistakes.

To properly set the stage, "CM/ECF is a comprehensive case management system that allows courts to maintain electronic case files and offer electronic filing over the Internet."[2] All cases in this district are administered through CM/ECF and, with few exceptions, electronic filing is mandatory.[3] Nevertheless, access to CM/ECF is restricted to "Registered Users."[4] Generally, attorneys admitted to the bar of the District Court, including those admitted *pro hac vice*, or attorneys representing governmental entities may register as Registered Users after completion of a training course established by the Clerk of this Court.[5] A Registered User receives a log-in and password, which serves as the Registered User's signature for all purposes for which a signature is required, including Fed. R. Bankr. P. 9011.[6] If a Registered User fails to comply with the CM/ECF procedures established by the Court, the Registered User's electronic

---

[2] *Killian v. Green Tree Serv., LLC (In re Killian)*, No. 08-80250-HB, 2009 WL 2927950 *1 n. 2 (Bankr. D.S.C. July 23, 2009); *see also In re Phillips*, 380 B.R. 493, 495 (Bankr. N.D. Ohio 2008) ("CM/ECF is an automated case management and docketing system that operates in a Web browser environment; it enables the Court to create electronic case files and implement electronic filing over the Internet directly to the Court's computer.").

[3] *See* Massachusetts Local Bankruptcy Rule ("MLBR") 9036-1 (adopting the Massachusetts Electronic Filing Rules of the United States Bankruptcy Court for the District of Massachusetts ("MEFR") set forth in Appendix 8); MEFR 1 ("electronic filing of petitions, motions, applications, memoranda of law or other pleadings, proofs of claim or documents . . . shall be mandatory as set forth in MLBR 9036-1.").

[4] MEFR 2(a).

[5] MEFR 2(b).

[6] MEFR 8.

filing privileges may be suspended.[7] In that event, the Registered User may continue to practice before the bankruptcy court, but must complete all filings via the Clerk's Office intake counter.

Attorney Curtis is a Registered User of CM/ECF, having previously completed the requisite training. To date, she has filed three bankruptcy cases before this Court, two of which were filed on behalf of the Debtor.[8]

On September 29, 2011, Attorney Curtis filed a voluntary Chapter 7 petition on behalf of the Debtor (the "First Case").[9] The following day, the Court issued an Order to Update directing the Debtor and Attorney Curtis to complete the petition by filing the following documents: (1) the Statement of Social Security Number by October 3, 2011; (2) the Creditor Matrix Upload[10] by October 5, 2011; (3) the Certificate of Credit Counseling by October 14, 2011; and (4) the "Attorney/Debtor Signature Page 3"[11] by October 14, 2011. On October 6, 2011, I dismissed the First Case for failure to upload timely the Creditor Matrix or file the Statement of Social Security Number.[12]

---

[7] MEFR 2(g).

[8] The present case is the Debtor's third bankruptcy filing. Her sequentially first case, filed as "Jacqueline Stallworth" on February 17, 2009, was a Chapter 13 case that was ultimately dismissed for failure to make plan payments. *See* Case No. 09-11199-WCH. I note this simply because I will be referring to her sequentially second and third cases as the "First Case" and "Second Case," respectively. *See In re Jacquelyn D. Stallworth,* Case No. 11-19245-WCH, filed September 29, 2011; *In re Jacquelyn D. Stallworth*, Case No. 11-19919-WCH, filed October 20, 2011.

[9] Case No. 11-19245-WCH. I further note that a cursory review of these schedules reflects that they are incomplete and inconsistent in many respects.

[10] In addition to simply filing a PDF document with the names and addresses of creditors, the Clerk's Office requires that such information be electronically uploaded into the CM/ECF System.

[11] While a case may be commenced with a petition containing electronic signatures of both the debtor and the attorney (i.e., the /s/), an original signed copy of the petition must be scanned and filed in order to complete the petition because a debtor is not a Registered User. MEFR 7(a).

[12] The dismissal order did not reference the Certificate of Credit Counseling or the "Attorney/Debtor Signature Page 3" as those documents were not yet due. Nonetheless, they were never filed.

3

On October 18, 2011, Attorney Curtis attempted to file a motion to vacate the dismissal of the First Case through the Court's electronic mail ("e-mail") system rather than through CM/ECF. On the same date, Clerk's Office personnel informed her via telephone that e-mail filing was not permitted and that all filings must be completed through CM/ECF.[13] On October 20, 2011, Attorney Curtis attempted to electronically file a motion to vacate the dismissal of the First Case. The document filed, however, contained the wrong PDF image and she was ordered to correct the filing within two business days.[14]

Rather than correct the deficient filing, Attorney Curtis filed a second Chapter 7 petition on behalf of the Debtor on October 20, 2011 (the "Second Case").[15] The petition contained only Debtor's name, which was spelled incorrectly,[16] the last four digits of her social security number, and the county of her residence, omitting her street and mailing addresses, as well as reference to her prior filings. Additionally, the schedules accompanying the Debtor's petition were blank or were otherwise incomplete, which, if taken literally, reflected that she had neither assets nor any creditors. Nevertheless, because the schedules were technically filed, the Clerk's Office did not automatically enter either an order to update or a deficiency order.[17]

As a result of these ineffective filings, on October 21, 2011, the United States Trustee (the "Trustee") filed a request for disgorgement of any fees received by Attorney Curtis (the

---

[13] *See* MEFR 1.

[14] The document filed appears to be a cover letter to the Case Administrator for a motion to vacate dismissal.

[15] Case No. 11-19919-WCH. The First Case was ultimately closed on October 25, 2011.

[16] On the petition for the Second Case, the Debtor's name was spelled "Jacquellyn D. Stallworth." Though identified in the OSC, this error was ultimately corrected on February 1, 2012.

[17] The default template of the electronic filing software used contains checked box indicating "none" on each schedule. As such, it was not immediately apparent to those performing quality control that the schedules were necessarily incomplete.

"Motion to Disgorge"), citing her failure to properly and timely file documents in both of the Debtor's cases and her failure to disclose the amount of fees she received. The Motion to Disgorge also referenced a third unrelated case, *In re Cecilia B. Stenstrom*,[18] in which Attorney Curtis had similar electronic filing difficulties.[19] The Motion to Disgorge was scheduled for hearing on November 2, 2011.

On the same date, I entered the OSC, directing Attorney Curtis to show cause why I should not impose sanctions against her, including, but not limited to, the suspension of her CM/ECF filing privileges until such time as she completes additional training in its use, in light of her repeated and egregious failures to comply with the procedures established by the Court in the *Stenstrom* and *Stallworth* cases.[20] The OSC required Attorney Curtis to respond in writing by October 27, 2011 and stated that a hearing would be held with respect to the OSC on November 2, 2011, the same date as the Motion to Disgorge. Nevertheless, due to administrative error, the OSC was not scheduled for hearing and no notice of hearing was issued. Moreover, Attorney Curtis failed to respond to the OSC.

---

[18] Case No. 11-13562-WCH.

[19] The history of the Stenstrom case is nearly identical to that of the Debtor's. Attorney Curtis failed to upload the Creditor Matrix or file the Statement of Social Security Number, which resulted in the dismissal of Stenstrom's case. She then made two deficient attempts to file a motion to vacate dismissal before doing so successfully. Concurrent with those efforts, Attorney Curtis attempted to complete the debtor's bankruptcy filing, but as a result of her attempts, the Clerk of the Bankruptcy Court was required to enter sixteen corrective entries on the docket. Ultimately, Attorney Curtis never uploaded the Creditor Matrix and the case remained dismissed.

[20] I am aware that the United States Court of Appeals for the First Circuit has previously held that a bankruptcy judge has only non-core jurisdiction over disciplinary proceedings that are omnibus in nature, do not arise in the context of an open bankruptcy case, are predicated upon ethical rule violations proscribed by state law, and have only a remote or overly speculative effect upon closed bankruptcy cases. *Sheridan v. Michels (In re Sheridan)*, 362 F.3d 96, 111-112 (1st Cir. 2004). As will be explained further below, the OSC should not be misinterpreted as attorney discipline, omnibus or otherwise. The OSC did not question whether Attorney Curtis should be practicing before this Court, as that is a matter for the District Court, but simply whether her electronic filing privileges should be suspended until such time as she completed additional training. Pursuant to 11 U.S.C. § 105(a), I have the authority to issue any order necessary to enforce the rules of this Court. The purely disciplinary issues warranting referral to the District Court arose later and solely in the present case.

5

On November 2, 2011, Attorney Curtis appeared with Attorney Anthony Alessi ("Attorney Alessi") as her counsel. Attorney Alessi represented that Attorney Curtis had not received any fees on account of either of the Debtor's cases and, as such, there was nothing to disgorge.[21] Citing Attorney Curtis's lack of experience with bankruptcy, Attorney Alessi stated that he would "get involved . . . to file the proper paperwork."[22] In so stating, he recognized that there might be "[§] 362 issues" regarding the continuation of the automatic stay as a result of the Debtor's multiple filings.[23] Based upon Attorney Alessi's representation that Attorney Curtis received no fees on account of the Debtor's case, I concluded that there was nothing to disgorge and denied the Motion to Disgorge.

In light of the administrative error regarding the scheduling of the OSC, it was not addressed on the November 2, 2011. The following day, the error was discovered and the OSC was reset for hearing on November 16, 2011. Recognizing that Attorney Curtis failed respond the first time, I entered a new response deadline of November 9, 2011. Again, Attorney Curtis failed to respond as directed.

Attorney Curtis appeared on November 16, 2011, at which time I informed her that she was now in violation of two court orders for failing to respond to the OSC.[24] While the Trustee agreed that a suspension of her electronic filing privileges was appropriate, the Trustee expressed concern that, in light of the Debtor's blank schedules, the Chapter 7 trustee would not be able to

---

[21] Trans. Nov. 2, 2011 at 4:19-25, 5:10-11.

[22] *Id.* at 5:6-8.

[23] *Id.* at 5:8-9.

[24] Trans. Nov. 16, 2011 at 2:10-25, 3:1.

6

conduct the meeting of creditors on December 7, 2011 as scheduled.[25] As such, the Trustee requested that Attorney Curtis be directed to re-file accurate schedules on behalf of the Debtor.[26]

I then asked Attorney Curtis if she was prepared to do so, to which she replied "I already did, Your Honor."[27] The Trustee responded that, as of the morning of the hearing, accurate schedules had not been filed,[28] leading to the following colloquy:

> THE COURT:  You don't seem to have high regard for --
>
> MS. CURTIS:  Yes, Your Honor, I do.
>
> THE COURT:  -- your representations to the Court.
>
> MS. CURTIS:  No.  Actually, Your Honor, I did file them and I filed them about a month ago and I filed all the documents.  There were 29 documents.
>
> And the problem, actually, was with -- everything was done in PDF form and the problem was the matrix and I refiled that in Word document form and that was unacceptable to the Court. And that's what started this whole thing. And it's not like I do a lot of things. And I don't have a problem with retaking the ECF filing class.
>
> And this is the same case, actually, with Jacquellyn Stallworth [sic], the very same case, and all those documents were filed at that juncture back --
>
> THE COURT:  Well --
>
> MS. CURTIS:   -- at the end of, on or about October 27th.[29]

In light of the Trustee's and Attorney Curtis's conflicting accounts as to whether all the proper documents were filed, I continued the matter one week to November 23, 2011.

---

[25] *Id.* at 3:4-20.

[26] *Id.* at 3:17-20.

[27] *Id.* at 3:22-23.

[28] *Id.* at 3:24-25.

[29] *Id.* at 4:1-19.

7

Prior to the hearing held on November 23, 2011, I reviewed the docket of the Debtor's case and confirmed that the only schedules filed were blank, as previously noted by the OSC and the Trustee. Nevertheless, at the November 23, 2011 hearing, Attorney Curtis represented that everything had been filed the night before:

> MS. CURTIS: Yes, good morning, Your Honor. I'm Attorney Georgia Curtis, as you know, and we're back here today.
>
> I have just spoken with the Trustee, who's in for Jennifer Hertz, and Attorney Alessi is going to be taking over this case. *I was in his office last night and he refiled all the documents that I had done previously on or about September 29th.* And as you know, we --
>
> THE COURT: They don't show on the docket. In which case did he file documents? You filed two cases for Ms. Stallworth.
>
> MS. CURTIS: Yeah, they're the same, actually. Unfortunately, they're the same person, the same --
>
> THE COURT: I know they're the same person, but they're not the same case.
>
> MS. CURTIS: Right. The one -- it was 11-11919?
>
> THE COURT: Yeah.
>
> MS. CURTIS: The one for today. He -- that's the one that he filed them in and he was just waiting for signatures.[30]

This story, however, changed once I expressed confusion over Attorney Alessi filing the documents without the Debtor's signature:

> THE COURT: I'm sorry. *He filed it, but he hasn't got signatures?*
>
> MS. CURTIS: *Right*. He -- we're going to meet in my office -- let me explain.
>
> We're going to meet in my office at 1300 Belmont Street at Eskenas & Kaplan where I work -- I'm Of Counsel to -- on, at 7:30 on Monday morning and he's going to be filing his appearance in this case. And --
>
> THE COURT: So he hasn't done anything yet?

---

[30] Trans. Nov. 23, 2012 at 2:5-23 (emphasis added).

8

> MS. CURTIS: As --
>
> THE COURT: I, I looked at the docket at 7:30 this morning --
>
> MS. CURTIS: Yes, sir.
>
> THE COURT: -- and there was nothing on there.
>
> MS. CURTIS: Okay.
>
> THE COURT: *So he hasn't filed the papers?*
>
> MS. CURTIS: *He hasn't filed* because, the reason is we were in his office and the reason is is because he has EZ- Filing and so do I and the, the copyright of the software doesn't allow filing.[31]

Because this "explanation" contradicted her initial representation that the schedules had been filed the night before by suggesting that they would not be filed for several more days, I asked her directly:

> THE COURT: So nothing has been done.
>
> MS. CURTIS: Correct.
>
> THE COURT: The papers have not been filed.
>
> MS. CURTIS: Correct.[32]

At this point, I noted that in addition to her failure to file the Debtor's schedules, Attorney Curtis failed to move to extend the automatic stay pursuant to 11 U.S.C. § 362(c)(3)[33]

---

[31] *Id.* at 3:1-20 (emphasis added). Attorney Curtis further represented that Attorney Alessi was waiting for the Debtor to sign a retainer agreement. *Id.* at 3:21-23

[32] *Id.* at 4:2-5.

[33] Section 362(c) provides in relevant part:

> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—

9

and that it had terminated with respect to the Debtor on November 21, 2011, to which she had no response, even though Attorney Alessi had recognized this issue at the November 2, 2011 hearing.[34] In light of her representation that neither she nor Attorney Alessi had secured the Debtor's signature, I asked:

> THE COURT: *Does she know you filed two cases?*
>
> MS. CURTIS: *Does she know that I filed two cases? Well, I paid for the second one, myself. So that --*
>
> THE COURT: *I didn't ask you that. Does she know --*
>
> MS. CURTIS: *No.*
>
> THE COURT: *-- that you filed --*
>
> MS. CURTIS: *She thinks it's one case, honestly.*[35]

When I pointed out to Attorney Curtis that she had now offered three conflicting accounts regarding whether the Debtor's schedules had been filed, she maintained that she had not misrepresented facts to me at any hearing and returned to her earlier position that the schedules were, in fact, filed:

---

> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;
> (B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed. . . .

11 U.S.C. § 362(c)(3)(A), (B); *see also Jumpp v. Chase Home Fin., LLC (In re Jumpp)*, 356 B.R. 789 (B.A.P. 1st Cir. 2006) (holding that if not extended by the thirtieth day after the filing of a debtor's second bankruptcy petition, the automatic stay terminates only with regard to the debtor and property of the debtor).

[34] Trans. Nov. 23, 2012 at 4:6-23.

[35] Id. at 5:9-15 (emphasis added).

    THE COURT: Just so I'm absolutely clear. Last week, you told me the papers have been filed. Today, you tell me they haven't been filed yet. You're going to meet with the client next Monday and then the papers will get filed.

    So when you told me they were filed last week, you --

    MS. CURTIS: They were.

    THE COURT: -- were lying to me.

    MS. CURTIS: No, I was not. They were, they were filed.

    THE COURT: Well, they're not filed yet.

    MS. CURTIS: Properly filed --

    THE COURT: They've not been filed --

    MS. CURTIS: -- the matrix, I know.

    THE COURT: -- yet.

    As of 7:30 this morning, which is when I looked, nothing had been filed.

    MS. CURTIS: Okay.

    THE COURT: They have not been filed. You misrepresented it to me. That's a very serious thing to do.[36]

In response Attorney Curtis provided the following explanation:

    MS. CURTIS: It was a problem originally with the matrix and going from PDF form over to Word, Microsoft Word. All the documents, I had entered them myself and that was really what the initial problem was. But all the documents were, I typed those in, actually, myself, personally. I scanned in all the signatures and did all the work.

    So yesterday, it only -- his secretary was sick. She had mono. So that's the reason why it wasn't done for today, honestly. And I can tell you that in good conscience.

    And in addition to that, that -- that's, really, initially, what started the problem, but the documents are done and whether or not the EZ-Filing and it didn't go in

---

[36] *Id.* at 5:20-25, 6:1-13.

11

electronically the way that the Court wanted was probably, I will take . . . responsibility for that.[37]

Because the Debtor's schedules still had not been filed, I continued the OSC another two weeks to December 7, 2011. Despite Attorney Curtis's protestations of innocence, I reiterated my belief that she had misrepresented facts to me and indicated that I would address the matter at the continued hearing.[38] In so doing, I expressly stated that I was considering referring her to either the District Court or the Massachusetts Board of Bar Overseers.[39]

On November 28, 2011, Attorney Curtis finally filed amended schedules on the Debtor's behalf. At the continued hearing held on December 7, 2011, the Trustee repeated his support of the proposed suspension of Attorney Curtis electronic filing privileges.[40] Attorney Curtis did not address the suspension of her electronic filing privileges, which I note she previously indicated a lack of objection to at the November 16, 2011 hearing,[41] but stated the following with respect to my intention to refer her to the District Court for further disciplinary proceedings:

> MS. CURTIS: Yes, Your Honor.
>
> Actually, Jacquellyn [sic] Stallworth knew about the second filing, just to let you know. I probably misspoke last time and I paid that filing fee from my own client fund, from my own, actually, operating account.
>
> And today we have the 341 meeting in Brockton.
>
> And that's it. And again, I will state for the record that I did not misrepresent to the Court my filing of documents. I did do those were amended [sic], as you know, on or about December 2nd.[42]

---

[37] *Id.* at 8:2-17.

[38] *Id.* at 9:1-7.

[39] *Id.* at 9:13-16.

[40] Trans. Dec. 7, 2011 at 2:16-23.

[41] Trans. Nov. 16, 2011 at 4:12-13.

[42] Trans. Dec. 7, 2011 at 3:14-23.

At the conclusion of the hearing, I entered an order immediately suspending Attorney Curtis's electronic filing privileges until such time as she completes additional training regarding the use of CM/ECF. I further indicated that I would forward a memorandum regarding the events that had transpired at the several hearings on the OSC to the District Court for further disciplinary proceedings.

### III. DISCUSSION

    1. Suspension of Electronic Filing Privileges

Although the order suspending Attorney Curtis's electronic filing privileges entered on December 7, 2011, a few words are necessary to explain the nature of this sanction. Pursuant to MEFR 2(g), the Court may suspend a Registered User from using CM/ECF if the user "repeated and/or egregiously failed to comply with the procedures established by the Court . . . ."[43] This rule is consistent with the First Circuit's prior recognition that the bankruptcy court has civil contempt powers pursuant to its inherent powers as a court and under the limited equity powers bestowed by 11 U.S.C. § 105(a).[44] Indeed, the suspension of a Registered User's electronic filing privileges pending further training is in the nature of civil contempt, as the Registered User may purge the contempt at any time by completing the required training.[45] Therefore, in my view, the OSC did not rise to the level of attorney discipline and, as noted above, the principles set forth in *In re Sheridan* are inapposite.[46]

---

[43] MEFR 2(g).

[44] *See, e.g.*, *Bessette v. Avco Fin. Serv., Inc.*, 230 F.3d 439, 444–445 (1st Cir. 2000); *Eck v. Dodge Chemical Co. (In re Power Recovery Sys., Inc.)*, 950 F.2d 798, 802 (1st Cir. 1991).

[45] *See, e.g., Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 829 (1994); *Penfield Co. of Cal. v. Sec. & Exch. Comm'n*, 330 U.S. 585, 590 (1947).

[46] *See* footnote 20 *supra*. I note that even if *In re Sheridan* was applicable to the OSC, the electronic filing deficiencies in the present case more than justify Attorney Curtis's temporary suspension.

2. <u>Referral to the District Court</u>

Pursuant to Local Rule 83.6(4)(B) of the United States District Court for the District of Massachusetts, a violation of "the ethical requirements and rules concerning the practice of law of the Commonwealth of Massachusetts, shall constitute misconduct and shall be grounds for discipline. . . ."[47] The District Court's local rules further provide that "a judge of the bankruptcy court for the District of Massachusetts is authorized as a judicial officer to make referrals for disciplinary proceedings . . . ."[48] Indeed, this Court's own local rules echo that authorization by providing that

> [i]n any matter in which a bankruptcy judge has reasonable cause to believe that an attorney has committed a violation of any canon or ethical rule, the bankruptcy judge may refer the attorney for disciplinary proceedings to the District Court pursuant to District Court Local Rule 83.6 and to any state disciplinary authority.[49]

Under the present circumstances, I have reasonable cause to believe that Attorney Curtis has violated at least one of the Massachusetts Rules of Professional Conduct, if not several, warranting referral to the District Court for further disciplinary proceedings.

Massachusetts Rule of Professional Conduct 3.3, titled "Candor Toward the Tribunal," requires that "[a] lawyer shall not knowingly . . . make a false statement of material fact . . to a tribunal."[50] In the present case, Attorney Curtis repeatedly made false statements of material fact to me with respect to the status of the Debtor's schedules. Despite the observations regarding the blank and incomplete nature of the schedules contained in the OSC, as well as the Trustee's statements to that effect at the November 16, 2011 hearing, Attorney Curtis represented at that

---

[47] LR, D. Mass. 83.6(4)(B).

[48] LR, D. Mass. 205.

[49] MLBR 2090-2.

[50] Mass. R. Prof. C. 3.3(a)(1).

14

hearing that the schedules had already been filed. That representation was false. It is indisputable that at all times prior to the filing of amended schedules on November 28, 2011, the schedules filed on the Debtor's behalf were blank, incomplete, and inaccurate.[51] Next, on November 23, 2011, Attorney Curtis began the hearing by stating that the Debtor's schedules had been filed the night before. Not only was that statement false, Attorney Curtis knew it to be false as evidenced by her later retraction of that story when I informed her that I knew the schedules had not been filed prior to the hearing. Instead, she then maintained that they would be filed in a few days. Finally, when confronted by this Court's belief that she had misrepresented facts, Attorney Curtis then returned to her first position, namely, that the schedules had been filed prior to the November 16, 2011 hearing. In sum, I am left with the inescapable impression that Attorney Curtis knowingly misrepresented facts to this Court. This alone warrants referral to the District Court.

In addition to Mass. R. Prof. C. 3.3, Attorney Curtis's representations and conduct before this Court heavily suggests that she may have violated other ethical rules. For example, at the November 23, 2011 hearing, in response to a direct question, she unequivocally stated that the Debtor was unaware of the second filing and believed that her first case was still pending. At the December 7, 2011 hearing, Attorney Curtis later claimed to have "misspoke" and that the Debtor knew about the second filing. Although I find her later clarification to be dubious, I ultimately need not resolve the matter because the subsequent filing of a signed petition ratified the filing of the Second Case even if it had been unauthorized.[52] Nevertheless, if the clarification is false, it

---

[51] To the extent that Attorney Curtis was referring to the schedules filed in the First Case, I note that it was dismissed precisely because Attorney Curtis was unable to complete that filing. Moreover, whether she filed schedules in the First Case is not relevant to question of whether they were filed in the Second Case.

[52] *See, e.g., Simon v. Amir (In re Amir)*, 436 B.R. 1, 18 (B.A.P. 6th Cir. 2010); *Willis v. Rice (In re Willis)*, 345 B.R. 647, 651 (B.A.P. 8th Cir. 2006).

not only constitutes another misrepresentation in violation of Mass. R. Prof. C. 3.3(a)(1), but her original representation that the Debtor was unaware of the second filing indicates that Attorney Curtis did not keep the Debtor "reasonably informed about the status of [her case]" as required by Mass. R. Prof. C. 1.4(a).[53]  Additionally, one might reasonably question the level of her diligence and competence to practice in the bankruptcy court based upon the record of proceedings.[54] Ultimately, these questions involve matters that do not impact the administration of the Debtor's bankruptcy case and are best left to the District Court for resolution.

As a final note, I recognize that referral to the District Court is not an action to be taken lightly. Unfortunately, the facts of this case warrant it. Attorney Curtis continued to dissemble even after her misrepresentations were discovered. As aptly explained by the bankruptcy court in *In re Kouterick*:

> Those who have no problem lying to a court do not belong in the practice of law. If an attorney can lie to a court with such ease, such an individual would not have any difficulty in lying to adversaries or clients either.[55]

Of course, the determination of whether an attorney may practice before this Court is one left to those bodies with such jurisdiction and I do not suggest otherwise.[56]

---

[53] Mass. R. Prof. C. 1.4(a).

[54] *See* Mass. R. Prof. C. 1.1, 1.3.

[55] *Midlantic Nat'l Bank v. Kouterick (In re Kouterick)*, 167 B.R. 353, 367 (Bankr. D.N.J. 1994). The *Kouterick* court also observed that an attorney without integrity is not likely to suddenly gain it by attending a professional responsibility course. *Id.*

[56] *See In re Sheridan*, 362 F.2d at 111-112; *In re LaFrance*, 311 B.R. 1, 25 (Bankr. D. Mass. 2004).

## IV. CONCLUSION

In light of the foregoing, I will forward this memorandum to the District Court for further proceedings.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: February 8, 2012